May it please the Court, Scott Shore on behalf of two Oregon classes involved in this case. One is referred to as the Slayman class, brought by Mr. Slayman for claims under Oregon revised statute Chapter 652 for unlawful deductions from paychecks. The other class is the Leiter class, which also involves claims for unlawful deductions under Chapter 652, but in addition includes claims for overtime violations, failure to pay overtime under Chapter 653. The distinction is somewhat important in light of a question the Court posed to us about some recent Oregon Court of Appeals case law that I plan to discuss. In general, I will say that the factual record, as Your Honor mentioned at the beginning of the Alexander argument, is nearly identical. The case law is very similar. The factors we rely on under Oregon case law are similar to the factors applied in the California case law in the right-to-control test. So the arguments made by Mr. Ross in the Alexander matter certainly apply equally here. Let me try to orient myself here. This is a 652 case? It's 652 in both classes and 653, which is the overtime. In a letter here, it says that State House may deal with 653 but not 652. What difference does that make? So the difference here is that under Chapter 652, the Oregon Supreme Court has clearly ruled under several cases that the right-to-control test, a basic four-part test, applies under Chapter 652. The Oregon Supreme Court does not appear to have ever directly addressed the factors that apply under Chapter 653. There is a recent opinion that you referenced, the Sejas opinion, which looked at Chapter 653 and said, we're not sure, but we believe that it will be more than the right-to-control test. It overruled some prior Oregon Court of Appeals cases involving the right-to-control test and looked at additional factors under an economic realities test. It's unclear to me why there's a difference between 652 and 653 in terms of the issue that you're talking about. Isn't it the same? What am I missing? It is the same in the sense that the primary factors under the right-to-control test will apply to both statutes. The slight difference involves the definition of employment under 652 and 653. Under Chapter 652 ‑‑ Yeah, I've read it. I mean, I understand where you're going. It doesn't seem substantively to be at all different, but I understand where you're going. Okay. Your Honor, we would agree substantively it doesn't seem to make a difference in this case. Okay. The factors that we argued in the district court and the factors we argued here would apply under whatever you call the test, both tests, and no different result would be reached under either test. Again, this is a somewhat abstract question. With respect to the so-called right-to-control test, I'm reading, for example, from the Oregon Court of Appeal case, Stamp v. Department of Consumer and Business Services, four-factor test, quote, number one, direct evidence of the right to or exercise of control. Now, of course, in shorthand, that's always referred to or almost always referred to as the right-to-control test, but as articulated here, it's not merely some legal right. That is to say, the right to control, but the phrase is the right to or exercise of control. Under Oregon law, what does right-to-control test mean? The reason I ask it this way is we've got an operating agreement that lays out certain things. We've got policies that lay out certain things. There's sort of various levels of control, some of them written out very formally, some of them written out and maybe there are policies of which there might be a little wiggle room. So what do we do? In the abstract, what does the Oregon right to control mean? I think perhaps the Court of Appeals may have been loose in its language, but the Oregon Supreme Court case law, including Nordling v. Johnston, which was a Chapter 652 case, refers explicitly to the right to control and talks about the right to interfere instead of the actual exercise of control. So we think the controlling Supreme Court case law, regardless of language in a particular Court of Appeals opinion, the right to control is a significant aspect of the test. Now, the answer you just gave me is, I think, a little less favorable to you than the language I just read you at a stump. Do you understand that? Yes, it is. We don't. Well, exercise of control under economic realities may expand the test. It's always been viewed that the right to control test is a narrower test and the economic realities test a more employee-favorable test. We believe, under this record, the operating agreement specifies the right to control many aspects of the employee's performance. I think there was some discussion in the Alexander case. And under Oregon law, if we're looking to right to control over the applicable legal test, do we look at the policies, the company's policies in addition to the operating agreement? They are evidence of the right to control and how the company looks at the agreements. But you can also look at, to start the agreement, and many aspects of the argument earlier about image appearance are directly stated in the operating agreement. FedEx contains the right to control. It says under operating agreement 1.10E, the drivers must foster a professional image and a good representation of FedEx. There are specific references in the operating agreement to appearance and image. So it's the policies and procedures may also evidence that, but there's specific right to control evidence in the operating agreement itself. So what if, and I'm making this clearer perhaps than the record does to make the point, what happens if the FedEx or whoever the principal is has the right to terminate upon the failure to comply with policies? Does that mean that the policies come within right to control? The policies are directly tied to the right to control because the nature of the agreement is so broad that it requires the drivers to do anything necessary to foster the relationship with FedEx's customers. So the policies... What I'm after is, does it come within Oregon's right to control test in the sense of what right to control means if the company has the right to terminate or the right to discipline or the right not to renew or to apply any other forms of sanction for a failure to comply with what's in the policies? That evidence would be consistent with the right to interfere that's been acknowledged under Oregon case law. Now you said right to interfere. Right to control. Okay. A couple additional points about Oregon-specific case law that weren't mentioned, obviously, in the Alexander agreement. Under Oregon case law, contractual labels about an independent contractor's status do not control if there's other evidence in the contract that there's control. The conduct is different than the mere contractual label. That's in the Wallowa Valley Stages v. Oregonian case, Shafts v. Rae's Land. Oregon also expressly has case law dealing with the right to hire assistants. In Blaine v. Ross, the logging trucker had the right to hire an assistant but still ultimately was concluded was an employee. There's also specific Oregon case law on the right to own your own vehicle and still be found an employee. So the Oregon case law deals with many of the specific arguments made by FedEx. How would Oregon case law deal not merely with hiring an assistant but hiring a driver to do an additional route? I think we'd have to look more particularly at the operating agreement to inform us how Oregon law might deal with that. And the operating agreement always gives FedEx a veto over that right. So I think there maintains a right to control on behalf of FedEx when they can reject assistance, they can reject the assignment, and have control over that process. Is it entirely within, under the operating agreement, is it entirely within FedEx discretion as to whether or not to allow or not allow a supplemental driver? It's based on the FedEx driving standards. And FedEx can reject deciding that the assistant doesn't meet the driving standards of FedEx. What if I'm a driver for FedEx and I want to get another truck? I want to get another driver. I'm going to pay the driver out of whatever proceeds come to me from FedEx. And I go to FedEx and I say, here's another driver. And FedEx says, well, it looks like a pretty good driver. And the truck you're proposing looks like a pretty good truck, but we don't want to do it. And they say, we don't want to do it because we've got plenty of drivers already. Do they have to give any other reason than we have plenty of other drivers already and the routes are fully covered? I mean, what permissible criteria are there in the operating agreement or elsewhere that allow FedEx to say no? It's the ability of FedEx to require approval and require meeting the FedEx driving standard guidelines. I know, but you maybe didn't answer my question. Because it seems to me possible, just as I understand the business, that if we've got four FedEx drivers that fully cover the needs within the particular unit and warehouse, and one of the drivers comes in and says, I want an additional route, here's a good driver and a good truck, and he meets all of those sort of appearance and so on standards in spades, can FedEx say, tough luck, we don't want them, we've got it covered? I think they can because FedEx has ultimate control over the work area and the right to reconfigure the work area or not assign a new work area to someone. And what if FedEx says, well, actually, we really do need a fifth driver, but we prefer not that person, we prefer somebody else who's over here who's not sort of subcontracting with you, we prefer somebody who's contracting directly with us. Is that a permissible ground for FedEx to say no thank you? I don't know that the driver would have the ability to enforce its right against FedEx, so I think that would be within FedEx's control. I think I've discussed all the Oregon-specific points, and we've had quite a long argument this morning, but if there are any questions about Oregon case law or other issues, I'll reserve my balance of my time for rebuttal. Good morning again, Your Honors. I'd like to start, if I may, with maybe tying off this question of the quote deal because it applies equally to both cases and it's the same implications. And the problem with identifying the document where there's a deal is it sort of came up in the district court briefing, which, as you know, the court's rules don't favor larding up the excerpts of record with a briefing. But here's what I can direct you to. In the SCR 153 in the Alexander case, the court explains the limitation that it's going to apply in order to facilitate classification. And then it says, If this correlative assumption is mistaken, several of today's rulings must be reconsidered. The court affords the plaintiffs 20 days from the date of this order within which to inform the court if this correlative assumption is mistaken. So that sort of sets the premise for the deal. The plaintiffs do respond. And that's where we get into the exchange I was describing earlier and that Ms. Ross was describing, where they responded with a document that lists six areas of evidence that they, in addition to the agreement itself and the policies and procedures, that they're going to rely on. And then there's exactly the exchange I was describing where FedEx Round responded and said, This is individualized. It includes business discussion notes. You know, the peaky ring story about one manager and one contractor. And the plaintiffs respond and said, No, no, we're not relying on that for that purpose, just for the existence of the form, for the existence of the fact that there are business discussions. And that's when the court responded with the moving to strike to the extent that there's individualized reliance. And I think what you heard from Ms. Ross this morning is agreement. I don't think there's any dispute before the court that the record is limited to the operating agreement, the generally applicable policies and procedures, which I'll discuss in a moment, and then those other areas of evidence, but only to the extent that they are common, generally applicable evidence of basically of the procedures, the way FedEx management approaches things on a class-wide basis. So that's the record that controls this proceeding, and it would also control any trial subject to the exchange we had earlier, Judge Fletcher, about if Judge Chen wants to revisit all that and maybe not have a class at all, as in the Narayan case. And I'll add the district court docket number. We don't have this document in the SCR, but the district court docket number in the MDL docket was 1140, 1140, that provides the plaintiff's response. And then you can just track the docket after that and see the exchange and how it all played out. But going to your question, Judge Fletcher, about the rights to hire others and the approvals, I think it's a critically important point because at its heart, the reason this is not the most important, not the only, but the most important reason this is not an employee relationship is that nobody has to show up for work, not ever. You have no obligation to provide personal service. What you have an obligation to is arrange for the service to be provided through hiring people if necessary, through obtaining the necessary equipment, including additional vans, including additional people, if your route expands, if the package is delivered into your route expands and you need to grow your business that way. FedEx Ground, every, I think, every example you gave hypothetically you proposed, Judge Fletcher, would be an unambiguous breach of the agreement. FedEx Ground does not have discretions writ large to approve a supplemental driver, the employees hired by the contractors, and they also don't have general discretion to approve an assignment of a route to a new contractor. Those are two different things. Wait a minute. I think my question was, do they have the right not to approve but to disapprove? And the answer is still the same. Under the agreement, the rights — So let me understand this. So that if someone comes in, let's say there are four drivers coming out of this warehouse, if that's the right term, the needs of the warehouse for delivery of packages are entirely taken care of by the four drivers. One of the four drivers comes in, says, I'd like to have an additional driver with an additional route. He's fully licensed. He looks good. He cleans up nicely. He's got a uniform. He's got a good truck. Can FedEx say, consistent with the operating agreement and the policies, we don't need him? Absolutely not. They have to bring in somebody else and give him the additional work? And this is so important. FedEx Ground isn't bringing them in. The contractor has a proprietary interest in his or her route. Well, you didn't understand my question then. What he wants is more work. What he wants is more packages to deliver. He wants a different route. And he's saying, I want to bring this additional person in, and I want a bigger route. I'm saying, can FedEx say no? All you get is this route, which is fully accomplished by a single person. Okay, there's several things I really need to unpack here. The route is proprietary within the contractor. He or she can staff that however she wants.  Because if the route grows so much, again, it's a defined geographic area, but suppose a Walmart and a Target and a Best Buy all move in there, it's up to the contractor to decide how that will be serviced. And who gets to decide how big the route is? Well, the geographic definition is defined at the outset of the relationship and can't be reconfigured. FedEx Ground does not have the right to reconfigure it if the contractor can show that he or she can service it. And this is exactly how the contractor would go about servicing it. If the Walmart comes in, just to use a hypothetical, and the terminal manager says, you've already got a pretty full route, I don't see how you're going to be able to handle those new Walmart packages, FedEx Ground cannot, is prohibited by the contract from just announcing that the route is going to be different and that Walmart is going to be assigned to somebody else. What FedEx Ground has to do under the terms of the operating agreement is say to the contractor,  And the way the contractor does it is to, typically, to obtain additional van, obtain additional driver to provide the service that's required under the agreement. So he's got five days in which to round up the guy in the truck? Yeah, and that's not at all, I mean, this gets into the actual individualized evidence that we're just not before us. We're talking about the rights under the agreement, but the reality is that happens all the time. That's all I can tell you is that it's perfectly common because there are people out there driving, lots of contractors with already large routes have additional drivers on hand. They can go to another driver with another route, take his supplemental. It does absolutely happen. But then there's another question that you asked, so I'm trying to unpack it, which is suppose the driver, the contractor says, I've got my one route, I want more business. I want to increase my profits, I want to grow my business, I want another route. That can happen in a couple of different ways under the contract, one of which is you can informally work it out with another contractor, typically with a pertinent route to obtain more of that contractor's packages. You can do that, you know, deliveries within that contractor's route. Or you can purchase another route from a contractor in the area. And that's exactly what happens with respect to what the Estrada Court referred to as the little financial empires that multiple work area contractors are able to establish by purchasing additional routes, which allows them to scale up their operations. They have more packages, so they have more income, but it also allows them to consolidate expenses, consolidate maintenance, and all of that, and so they can increase their profits. And so that's in the record in Estrada, and the Estrada, a California court applying California law, says that's an employee relationship. Not as to the multiple work area contractors. As to the multiple work area contractor. In that case, the Estrada Court said that that person operating under the exact same agreement as the other contractors is a independent contractor. Yeah. No, I remember that. That was the trial court that said that, and that issue didn't go up on appeal, right? That's correct. That's correct. Okay. Now, you say that FedEx has no ability to control who the drivers are? No. If I said that, I misspoke. I didn't say they have no ability. I said they didn't have unfettered discretion under the agreement, or I didn't mean to say no ability, under the agreement with respect to additional drivers for a contractor. It's 2.2 of the agreement, and it's entitled Employment of Qualified Persons, and here's what it provides. The person, quote, shall be qualified pursuant to applicable federal, state, and municipal safety standards and FedEx ground safe driving standards. That's the only requirement, so they have to be licensed. So if Jack the Ripper with ten felonies shows up, if Jack the Ripper otherwise qualifies, FedEx has to have Jack the Ripper drive the trucks? Not quite. First of all, there is the FedEx ground safe driving standards, so if Jack the Ripper has gotten into auto accidents, that would be a problem for him. But also – That's not Jack's problem. Jack kills people. Yeah, right. So the other point, though, is, of course, once employed by the contractor, the driver still has to go out each day and, yes, is subject to FedEx ground rights to ensure that services being provided by professional, well-groomed individuals. I think it would be fair to say if the manager knew he was a ten times convicted rapist or something, that would be consistent with the operating agreement to not allow that driver to go out. But that has zero to do with the contractor's rights to continue to provide services. They just have to get somebody who's not Jack the Ripper but otherwise has a license and doesn't have a series of accidents recently. That's basically what the safe driving standards entail. So there's no discretion. Exactly the hypotheticals you were proposing are impermissible under the agreement. So long as they're qualified, they can be employed by the contractor to fulfill the contractor's service agreement under the operating agreement. Now, it's slightly different for assignment of the route. So if you're a contractor and want to sell your route to somebody else, again, the other side suggests that FedEx ground has unfettered discretion to simply say no, but that's also not true. So under the agreement, assignment can be, a route can be assigned, quote, to a replacement contractor acceptable to FedEx ground as being qualified to provide the services of contractor under this agreement. So there's somewhat a broader range of authority under FedEx ground. But, again, to your hypotheticals, it would be impermissible to say he looks qualified, he's got the right equipment, he's got. This is a difficult case in part because of the MDL way this has showed up. And so I'm back on the MDL question. Now, the class as certified is all drivers, whether or not they're driving themselves and only, or whether they're doing the subcontracting and so on. The district judge grants summary judgment to you with respect to the class that includes, I gather the majority of people are just individual drivers. And a minority are not. They've contracted out and so on. What do I do with the fact that I might think under at least California law and maybe Oregon law, if these are individual drivers who have not contracted out, in other words, making the distinction that was made in Estrada, I think summary judgment probably was not warranted with respect to the individual drivers. What do I do? Well, I mean, you would have to draw, I guess, the appropriate conclusion. And accepting your premise, which I want to contest in a moment, but accepting that, I'm sure that the answer would have to be you would say that summary judgment is not warranted. But the problem is there's no basis in California law under the factors of California law in a case like this with this kind of class-wide evidence or in Oregon law for drawing a distinction because the question is whether you drive all the time, sometimes, or never, you still have the same rights and obligations in the contract. And so the question that the plaintiffs have put before the Court, again, going back to the deal we discussed, is whether, given that commonly applicable evidence, the relationship that's created is one that's an independent contractor relationship or an employee relationship. Given the rights and opportunities that they have under the agreement, it would be a different case, a fundamentally different case, I submit, Your Honor, if an individual showed up and said, I understand what the agreement says. I understand my rights and obligations. But it's illusory because each time I tried to hire somebody, the terminal manager said no. I tried to sign the contract. The route terminal manager again said no. It just wasn't what I expected. And that's a point I want to emphasize, which is this is not a case like other cases where the agreement, the choice is a unilateral choice by FedEx Ground to treat the contractors as independent contractors. The class members in this case want to be independent contractors. They answered a request for admission that says we want to be independent contractors. That's why they entered into this agreement as opposed to some other, you know, going to work for UPS and being treated as employees without the kind of profit opportunities that they have here. And what they're saying is despite what I thought I signed up for, in fact, that's not how I've been treated. But the problem is this doesn't make any sense to me at all. This is a lawsuit saying on behalf of the class we are employees. And you're saying they want to be independent contractors. They've signed a contract that says in terms they are independent contractors. But for you to say they want to be independent contractors goes against the very premise of the lawsuit. But I understand, but I'm basing it on the request for admission. This isn't the contract itself. It does say that, but the request for admission also say we want to be independent contractors. What they're claiming is they weren't treated as. Hold on, hold on, hold on, hold on. You say we. Who's the we? We want to be independent contractors. The class members. The contractors. That was part of the discovery. The contractors. Right. The employees don't say we want to be independent contractors, do they? Well, there are no. I'm not sure who you're referring to. In the class members, the question is whether independent contractors are employees. The drivers are all employees of the contractors. That's true. But the contract distinguishes between contractor and a qualified operator. That's the first obligation of the contractor. And the principal obligation of the contractor under the agreement is to provide a qualified operator. It doesn't have to be them. And often it's not them. There's something confusing about this. If you could just give me the record site for this admission, because I'm not sure I'm following this. I may not be able to get it orally, because there's obviously some subtlety here that I'm not quite picking up, because what you say, at least as I heard it, is totally inconsistent with the premise of the lawsuit. It's cited in our brief, but I don't have it handy. I apologize for that. We will track it down. It's SCR-242 in the Alexander case. SCR-242. 242 is where it starts, and that's a series of response to requests for admission. But it shouldn't be that surprising, Your Honor. Time out. Time out. What does it say? What does it say? Don't just put it down. What does it say? My apologies. I'll have to go through and find the individual. Request for admission number one, admit that you intended to enter into an independent. Okay. Okay. People at West talk slowly. Sorry. Some of us listen slowly. Okay. So read slowly. Okay. 244, SCR-244, request for admission number one, admit that you intended to enter into an independent contractor relationship with defendants. Answer. There's some objections. Named plaintiffs admit that on the day they signed their original operating agreement, in reliance on defendant's statements that they would be an independent contractor, they intended to enter an independent contractor relationship with defendants. Named plaintiffs deny, however, that an independent contractor relationship ever, in fact, existed between them and defendants. And that was the point I was going to make, Your Honor, with respect to the governing law under both Oregon and California. It shouldn't be surprising that a person would want to be an independent contractor. The amicus brief of the American Trucking Association shows site studies establishing that there are lots of service providers out in the economy who prefer that model, given the profit opportunities. They want to be an independent contractor. But the argument in the usual case But that admission doesn't do anything to the loss of one way or the other. What they're saying is, once you read the whole answer, they're saying, well, you know, if you treat it as an independent contractor, we'd be an independent contractor. But the premise of the lawsuit is you're not. Right. And that's precisely the point I was making. So that remains. So we've got the question. But that's not the premise of the lawsuit, is it? Because you don't get to go into how they were actually treated. You look at the operating agreement and the common practices. Right. Is that your point? That's the choice the plaintiff's lawyers made to obtain a class certification. I'm just saying that the individual class members, this is not a situation where they want to be employees. They're hoping for a result that says this kind of relationship is not an independent contractor relationship. And you're arguing they've waived the opportunity to show that they did not get what they thought they were buying into? I'm saying that given the way that their lawyers chose to prosecute the case to obtain class certification, it's not really a waiver question. It's simply that they chose to establish that for each and every class member on the basis of class-wide documents rather than an individual. How I was treated. Yeah. An individual case where somebody shows up and said, here's what I thought I was getting and here's why I didn't. Right. That's a fundamentally different kind of case that we don't have before us now. So for purposes of our ruling on the summary judgment issue, we look at what was properly in front of the MDL judge and see, looking at the operating agreement, looking at the policies and looking at whatever else, I'm not sure quite where those outer boundaries are. We look at that and say, okay, is that an independent contractor relationship or an employee relationship? Let me ask you this. Judge Easterbrook wrote a very interesting passage where he says, you know, with a multifactor test, even if the actual facts are undisputed, I mean, here we have these documents. I mean, who's going to dispute the documents? That's what the documents say. Nonetheless, because it's a multifactor test with which we're measuring these somewhat interconnected things and so on, you don't get a summary judgment on that. Do you agree with Frank, with Judge Easterbrook? I do not. And the more interesting point is that Judge Easterbrook doesn't agree with Judge Easterbrook anymore. Well, he does that sometimes. Yeah. It happens to all of us. But, you know, we cite in the brief, I believe, and we can certainly provide them for you, multiple cases since Loritzen, that's the case you're referring to, in which Judge Easterbrook has either authored or joined opinions affirming summary judgment when there's a multifactor test. And on the Loritzen model, you know, there's factors that cuts both ways. He has nevertheless held, as this Court has held time and time and time again, that even when the factors cut both ways, summary judgment can be appropriate because these are legal conclusions, legal factors that a judge applies, that a court applies based on the undisputed underlying record. If you think about what the case would look like at a trial, given the record we have, you'd basically be handing the jury the operating agreement, handing them the policies and procedures, and I want to say one thing about those, and then, you know, the existence of the forms and saying you decide what this means. It's not the kind of trial you really normally imagine. What you normally imagine a jury doing is resolving disputes of facts like you had in Orion, like you had in Estrada, a different kind of situation. This one's, hmm. Because you may just be talking me into granting summary judgment for plaintiffs instead of saying, you know what, this ought to go back for trial. Well, I mean, I don't think there's any way to do that under Oregon or California law. Given that Oregon four-factor tests, three of the four factors unambiguously favor independent contractor conclusion, the furnishing of the tools and equipment, the method of payment, and the right to discharge without liability. And then you have the right to control issues where there's just absolutely no requirement of personal service whatsoever. And I just want to say one other thing about the policies and procedures, if I may, which is to be clear about what you're looking at. The policies only govern FedEx management employees. They do not govern conduct of independent contractors. And, indeed, the contracting policies provide that if there's ever any conflict, the operating agreement trumps and controls. So the policies only tell managers what to do. They don't tell you anything, or we say to submit nothing probative, about the rights that contractors have under the agreement. The procedures are even less probative because they are not even binding on FedEx ground managers. They're just suggestions about good practices. And so they don't take you very far. What does take you far, we submit, is the underlying record and the four-factor Oregon test, which we submit compels the same conclusion Judge Goodwin reached in Jenkins, which is that the service providers are independent contractors, because FedEx ground, as in Jenkins, does not have the right to supervise closely and monitor and alter the conduct of contractors in the performance of their obligations under the agreement. Thank you. Thank you. Response. A few responses with respect to the operating agreement in particular and questions about FedEx's control and rights with respect to reconfiguring routes or allowing an operator to choose someone else to take on a new truck. It's operating agreement section 2.1, which is in excerpt of record 338 of the Slayman case. It says contractor may, with the consent of FedEx ground and consistent with the capacity of the terminal serviced by the contractor, own and operate more than one vehicle. So the veto right and the control is clear in that section. It's also referenced in operating agreement section 5.3. Judge, is it right there? Excerpt of record 349 in the Slayman case. It talks about configuration, the primary service area as that area is configured from time to time. And the testimony of the CEO of FedEx ground, which is at excerpt of record 1093, said that FedEx can reconfigure a route over the driver's objection. The final point I have with respect to both labels and the intent of the drivers is that it doesn't matter under Oregon law. You cannot contract out of the protections of the wage and hour laws, and particularly ORS Chapter 652. We cited a case, Taylor v. Werner Enterprises at 329 Oregon 461. It discusses Oregon Chapter 652, which states, an employer may not by special contract or any other means exempt the employer from any provision of liability. Excuse me, excuse me. That's an employer. It doesn't say independent contractor, does it? Well, that's the issue at law in this case. Well, I know, but the issue in this case is whether it's an independent contractor or an employer. Sure, an employer can't contract out from underneath. The question is, is FedEx not an employer? I think the only way to read that is that it must apply as well to employees waiving the rights, because that's the intent of the Taylor v. Werner case. Unless there are any further questions, Your Honor. None. Thank you. Thank both sides for their helpful arguments. The case of Slayman, and there's the other case as well, versus FedEx ground package system now submitted for decision.
judges: Goodwin, Trott, Fletcher